Donald Peder Johnsen (011545)
dpj@gknet.com
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

Tomio B. Narita (admitted *pro hac vice*)
tnarita@snllp.com
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816
(415) 283-1000

Attorneys for defendant
Premium Collection Services, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Horvath,<br><br>Plaintiff,<br><br>vs.<br><br>Premium Collection Services, Inc.,<br><br>Defendants. | CASE NO.: 2:09-CV-02516-GMS<br><br>**DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

1 | Defendant Premium Collection Services, Inc., by and through its
2 | undersigned counsel, hereby moves under Rule 12(b)(6) of the Federal Rules of
3 | Civil Procedure, for an order dismissing the First Amended Complaint in its
4 | entirety. The plaintiff's allegations fail to state viable claims upon which the
5 | Court may grant relief against the defendant.
6 | This motion is based upon the file, record, and proceedings herein, and upon
7 | the following Memorandum of Points and Authorities.
8 | RESPECTFULLY SUBMITTED this 25th day of February, 2010.
9 | SIMMONDS & NARITA LLP

11 | By: s/Tomio B. Narita
12 | Tomio B. Narita
Attorneys for Defendant

1.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

In response to Defendant's motion to dismiss the original complaint, Plaintiff Richard Horvath ("Horvath") filed a First Amended Complaint which again alleges, *inter alia*, that defendant Premium Collection Services, Inc. ("PCS") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (the "FDCPA"). Like the original complaint, the amended pleading alleges that PCS violated section 1692g of the FDCPA, because Horvath allegedly never received any communications from PCS, including the validation notice required by that section of the statute. But Horvath's amended allegations do not cure the fatal defect contained in his original complaint – they simply confirm the defect, and confirm that amendment is not possible. The motion should be granted, and this case should end here.

As PCS previously explained, by the Act's plain language, the notice provisions of section 1692g do not apply until after a collector has communicated directly with the consumer. Since Horvath alleges that PCS never contacted him at all, its obligation to supply Horvath with notice set forth at section 1692g was never triggered.

It is irrelevant that Horvath now speculates that PCS attempted to send him a letter, and that the letter may have been returned PCS as undeliverable. The bottom line is that if the allegations of the First Amended Complaint are accepted as true, there were no communications with Horvath. The FDCPA claim fails as a matter of law.

Horvath alleges PCS was retained to collect an alleged debt owed to non-party Ford Motor Company ("Ford"). *See* First Amended Complaint, ¶¶ 4-8. He claims Ford provided him with $3,000 in payments under its Long Term Disability Policy, but Ford later took the position Horvath was not disabled and demanded return of the payments. *Id*. ¶¶ 10-17.

Horvath alleges PCS was retained to collect the debt, and that PCS improperly "placed this purported obligation on Plaintiff's credit record with the various credit reporting agencies . . ." *Id*. ¶ 18. He also asserts that the "custom and practice of collection agencies" is to send an initial letter to consumers when the account is placed for collection, and that, on information and belief, a letter was sent by PCS to Horvath shortly after PCS was retained by Ford. *Id*. ¶¶ 20-21. Horvath claims the never got any letter from PCS, and that if a letter was sent to him, it was sent to an incorrect address and may have been returned to PCS. *Id*. ¶¶ 20-21.

As with his original complaint, Horvath makes it extremely clear that PCS <u>never</u> made contact with him. *Id*. ¶ 25. The only communications made by PCS in connection with collecting the debt were the alleged reports to the consumer reporting agencies. *Id*. ¶ 26.

## **ARGUMENT**

### **I.   STANDARDS GOVERNING MOTIONS TO DISMISS**

A dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on either: 1) the lack of a cognizable legal theory; or 2) the absence of sufficient facts alleged under a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., L.P.*, 534 F.3d 1116, 1121 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, Plaintiff must, "at a minimum, plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 1122 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

As the Supreme Court explained in *Twombly*, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In a subsequent decision, the Supreme Court observed:

[A] court considering a motion to dismiss can choose to begin by

> identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Only complaints that state "a plausible claim for relief" can survive a motion to dismiss. *Id.* The determination of whether a plausible claim for relief has been stated is "a context-specific task" that requires a court to "draw on its judicial experience and common sense." *Id.*

## II. THE FDCPA CLAIM FAILS BECAUSE THERE HAS BEEN NO INITIAL COMMUNICATION WITH HORVATH AND THUS SECTION 1692g WAS NEVER TRIGGERED

The FDCPA requires that every debt collector must, either along with in its initial communication with the debtor, or within five days of that communication, send the consumer a notice that he has certain rights to dispute the debt and seek verification. *See* 15 U.S.C. § 1692g. Horvath alleges that PCS violated section 1692g, because it allegedly failed to send him a notice required by that section. He now speculates that PCS may have tried to send him a letter containing the notice, but the letter was returned to PCS as undeliverable. None of his new allegations change the result.

The plain language of the FDCPA provides that a collector need not send the section 1692g notice until five days <u>after</u> the collector has actually had the first "communication" directly "with a consumer" concerning the debt. *See* 15 U.S.C. § 1692g (notice must be sent "[w]ithin five days of the initial communication with a consumer in connection with the collection of any debt ..."). The Act is crystal clear on this point. It does not say the notice must be provided within five days of any "attempted" communication with the consumer. It does not say to give the notice within five days of a communication with a third party. The notice is not required until five days after the collector actually communicates "with a consumer" in connection with an attempt to collect. *Id.*

4.

If the allegations of the First Amended Complaint are accepted as true, as they must be, PCS <u>never</u> communicated directly with Horvath. *See* First Amended Complaint, ¶ 25 (PCS allegedly failed to send the validation notice "or have any other successful contact with Plaintiff at any time, . . ."). Given this, the notice requirements of section 1692g were never triggered, and the FDCPA claim fails as a matter of law.

As with his original complaint, Horvath claims that PCS reported the debt to "various credit reporting agencies." *See* First Amended Complaint, ¶ 26. Even if this is assumed true, however, this is not a "communication" with Horvath. Numerous courts have recognized the communications with consumer reporting agencies or other third parties do <u>not</u> trigger an obligation to send the section 1692g notice to the consumer. *See, e.g., Robinson v. TSYS Total Debt Managment, Inc.*, 447 F. Supp. 2d 502, 508-09 (D. Maryland 2006) (summary judgment for defendant on section 1692g claim: allegation that Defendant "communicated the debt to Plaintiff's credit report" does not support section 1692g claim "because it is not a communication with a consumer."); *Pretlow v. AFNI, Inc.*, 2008 WL 345593, *1 (W.D. Va. Feb. 7, 2008) (dismissing section 1692g claim where plaintiff only alleged communications between defendant and consumer reporting agencies); *Kaiser v. Braje & Nelson, LLP*, 2006 WL 1285143 (N.D. Ind. May 5, 2006) (granting summary judgment on section 1692g claim where all communications were with debtor's attorney, not with debtor).

### III. THE CASES CITED BY PLAINTIFF CONFIRM THAT DISMISSAL OF THIS ACTION IS PROPER

In his Opposition to the motion to dismiss the original complaint (*see* Docket 17), Horvath relied upon three cases that do not help him. In fact, all three cases confirm that dismissal of this action is proper.

Horvath cited to *Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197 (9th Cir. 1999) to argue that a collector can satisfy the requirements of

1  section 1692g of the FDCPA without proving that the debtor actually received the
2  written validation letter. This is an accurate reading of *Mahon*, but the argument
3  is completely irrelevant in the context of this motion. In *Mahon*, it was important
4  to determine whether the section 1692g letter could be deemed received by the
5  debtors, because the collector had engaged in subsequent communications with the
6  debtors. *See Mahon*, 171 F.3d at 1199 (describing subsequent letters and a phone
7  call placed by the collector). The Court concluded the letter was sent and that,
8  consistent with the Mailbox Rule, the debtors had received it, so there was no
9  violation. *Id*. at 1201-02. Once again, in this case, Horvath has alleged that he
10 received <u>no</u> communications from PCS at all – not the section 1692g letter, or any
11 other letter or call. Given this allegation, PCS never had an obligation to provide
12 him with the section 1692g notice.

13        For this same reason, the other two cases cited by Horvath, *Palisades
14 Collection, LLC v. O'Brien*, 172 Ohio. App. 3d 186 (2007) and *Johnson v.
15 Midland Credit Management, Inc*., 2006 WL 2473004 (N.D. Ohio Aug. 24, 2006),
16 are not persuasive or controlling. In both cases, it was important to determine
17 whether the section 1692g letter was received (or deemed received) by the
18 consumer, because the collector had engaged in subsequent communications with
19 the consumer in an attempt to collect the debt. *See, e.g.*, *O'Brien*, 172 Ohio App.
20 3d at 190-91(collector mailed a first and a second section 1692g letter, and then
21 served a collection complaint); *Johnson*, 2006 WL 2473004, at *1 (plaintiff
22 allegedly received a collection letter dated January 13, 2005). Here, by contrast,
23 Horvath claims that there were no communications with him, and thus section
24 1692g does not apply.
25 //
26 //
27 //
28 //

## CONCLUSION

Horvath insists that PCS never communicated with him. Given this, the section 1692g claim fails as a matter of law. The FDCPA claim cannot be amended. The complaint should be dismissed in its entirety.

RESPECTFULLY SUBMITTED this 25th day of February, 2010.

SIMMONDS & NARITA LLP

By: s/Tomio B. Narita
Tomio B. Narita
Attorneys for Defendant

I certify that on this 25th day of February, 2010, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Bradley D. Gardner (011211)
Attorney for Plaintiff

By: s/Tomio B. Narita
Tomio B. Narita
admitted *pro hac vice*