**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Horvath, | No. CV-09-2516-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Premium Collection Services, Inc., | |
| Defendant. | |

Pending before the Court is the Motion to Dismiss filed by Defendant Premium Collection Services, Inc. ("PCS"). (Dkt. # 18.) For the following reasons, the Motion is granted.

## BACKGROUND

Plaintiff Richard Horvath ("Mr. Horvath") worked for Ford Motor Company ("Ford") from February 2000 until his retirement in July of 2009. During his employment, Mr. Horvath received approximately $3,000 in disability payments from Ford. After making these payments, however, Ford apparently determined that Mr. Horvath was not disabled within the meaning of Ford's long term disability policy and demanded that Mr. Horvath return the $3,000. Believing that he did qualify for the disbursements, Mr. Horvath refused to return the funds.

When Mr. Horvath refused to return the funds, Ford retained PCS to collect the $3,000. And though Mr. Horvath contends that he never received any communication from

1 PCS regarding the debt, he alleges that PCS attempted to send him written communication
2 about the purported debt. According to Mr. Horvath, he never received the communication
3 because PCS failed to properly mail the communication to a valid address. After PCS failed
4 to make contact, it allegedly reported Mr. Horvath's debt to the major credit reporting
5 agencies, which adversely affected Mr. Horvath's credit. According to Mr. Horvath, PCS
6 failed to provide him with certain disclosures that would have allowed him to contest the debt
7 or otherwise take steps to have it removed from his credit record.

8 On December 12, 2009, Mr. Horvath initiated the instant case against PCS, alleging
9 three causes of action: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"),
10 15 U.S.C. § 1692 *et seq.*, (2) negligence, and (3) defamation. (Dkt. #1.) With respect to his
11 FDCPA claim, Mr. Horvath contends that PCS failed to provide disclosures required when
12 a debt collector contacts a debtor about his or her debt, and then unlawfully reported
13 information regarding his debt to a consumer reporting agency. (*Id.*) PCS promptly filed a
14 Motion to Dismiss, arguing that Mr. Horvath's Complaint failed to state a claim for relief.
15 (Dkt. # 11.) After Mr. Horvath filed an Amended Complaint as a matter of course (*see* Dkt.
16 # 16), PCS again moved to dismiss Mr. Horvath's FDCPA claim pursuant to Federal Rule
17 of Civil Procedure 12(b)(6). (Dkt. # 18.)

## LEGAL STANDARD

19 To survive a dismissal for failure to state a claim under to Rule 12(b)(6), a complaint
20 must contain more than a "formulaic recitation of the elements of a cause of action[;]" it must
21 contain factual allegations sufficient to "raise the right of relief above the speculative level."
22 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And while "[a]ll allegations of
23 material fact are taken as true and construed in the light most favorable" to the non-moving
24 party, *Smith v. Jackson*, F.3d 1213, 1217 (9th Cir. 1996), "conclusory allegations of law and
25 unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a
26 claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (internal quotations
27 marks omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion
28 to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

**DISCUSSION**

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The Act, therefore, prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, the making of any false, misleading, or deceptive statements in connection with a debt, and it requires collectors to make certain disclosures. 15 U.S.C. §§ 1692a, *et seq.* Upon review of the Amended Complaint, Mr. Horvath FDCPA claim appears to be premised on two sections the Act: §§ 1692c and 1692g. Neither of these provisions, however, provide a legal basis to support Mr. Horvath's claims.

**I.    Mr. Horvath's Claim Pursuant to § 1692c Fails.**

Though Mr. Horvath does not explicitly allege a violation of § 1692c, the Amended Complaint does allege that PCS violated the FDCPA when it reported information regarding Mr. Horvath's debt to a consumer reporting agency. (Dkt. # 16 at ¶ 26.) Under § 1692c(b),

> a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency *if otherwise permitted by law*, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. 1692(c)(b) (emphasis added). Where the debt collector communicates with a consumer reporting agency, the "communication, in and of itself . . . does not support a cause of action under the FDCPA," unless that communication is otherwise unlawful. *Acosta v. Campbell*, 2006 WL 146208, at *13 (M.D. Fla. Jan. 18, 2006) (citing *In re Creditrust Corp.*, 283 B.R. 826, 832 (Bankr. D. Md. 2002)); *see* 15 U.S.C. § 1692c(b). The FDCPA, however, does not specify when communications between a debt collector and a consumer reporting agency are unlawful. *See* 15 U.S.C. § 1692a, *et seq.*

Yet, while the FDCPA is silent on this matter, the Fair Credit Reporting Act ("FCRA"),[1] specifically explains when communication is permitted. *See Acosta*, 2006 WL 146208, at *13 (citing 15 U.S.C. § 1681, *et seq.*). Section 1681s-2(a) of the FCRA, for instance, "requires 'furnishers of information . . . to consumer reporting agencies to provide accurate information'" regarding a consumer's debt. *Id.* (quoting § 1681s-2(a)). But while this provision requires information to be accurate, there is no private right of action to enforce the obligations established by § 1681s-2(a). *See Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002) (holding that only federal and state officials can enforce the provisions set forth in § 1681s-2(a)). Section 1681s-2(b), which does contain a private right of action, imposes additional duties upon entities that furnish information to consumer reporting agencies when a consumer or reporting agency disputes the information provided by the furnisher. *See* 15 U.S.C. § 1681s-2(b). Under that Section, the furnisher must conduct an investigation, review relevant information, report the results of that investigation, and remove inaccurate information from the report when a consumer or the agency informs a furnisher of a dispute,. *Id.*

In this case, Mr. Horvath has not alleged any facts suggesting that the communications between PCS and consumer reporting agencies was unlawful under 1692c(b) of the FDCPA. To the extent that the Amended Complaint can be read to imply that PCS's communications with credit reporting agencies were false or inaccurate, this cannot serve as the basis for his claim because the FCRA specifically precludes private parties from bringing claims under § 1681s-2(a). Mr. Horvath cannot circumvent the FCRA by raising his claim pursuant to the FDCPA. And while § 1681s-2(b) would provide a private right of action, Mr. Horvath has not alleged that he contacted PCS or the credit reporting agencies to dispute the debt. And even if he did contact the consumer reporting agencies, he has not alleged that those agencies notified PCS of the dispute or that PCS failed to comply with its obligations under § 1681s-2(b). Thus, to the extent that Mr. Horvath contends that PCS's contact with consumer

---

[1] Mr. Horvath does not raise any claims under the FCRA. (*See* Dkt. # 16.)

reporting agencies was unlawful, he has not provided a legal basis suggesting that this is the case.

Read broadly, the Amended Complaint arguably alleges that PCS unlawfully communicated information regarding Mr. Horvath's debt with other third parties. The Complaint, however, does not identify with whom PCS communicated. *See Korzeniowski v. NCO Fin. Sys.*, 2010 WL 466162, at *4 (D. Conn. Feb. 8, 2010) (dismissing claim under § 1692c(b) where plaintiff failed to allege facts suggesting that defendant made an unlawful communication); *see also Kinel v. Sherman Acquisition II LP*, 2006 WL 5157678, at *10 (S.D.N.Y. Feb. 28, 2006) (dismissing § 1692c(b) claim where the plaintiff merely speculated that a debt collector had unlawfully contacted third parties about his debt). Accordingly, Mr. Horvath's claim that PCS unlawfully communicated with third parties about his debt is dismissed without prejudice.

**II.  Mr. Horvath's § 1692g Claim Fails.**

To the extent that he seeks relief pursuant to § 1692g, Mr. Horvath has failed to state a claim. Section 1692g provides in pertinent part:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the

- 5 -

> consumer with the name and address of the original creditor, if different from the current creditor.

18 U.S.C. § 1692g. Under these provisions, a defendant is liable when he initiates communication with a debtor regarding a debt and then fails to comply with the necessary notice requirements. *Id.* Absent a communication, however, there is no liability under the statute for failure to provide the requisite notice. *See Robinson v. TSYS Total Debt Management, Inc.*, 447 F. Supp.2d 502, 508–09 (D. Md. 2006) (rejecting a claim for relief under § 1692g claim where there was no communication between the debt collector and the consumer).

Resolution of this claim depends on whether PCS ever communicated with Mr. Horvath. Under the Statute, "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2); *see Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999) (applying this definition in the context of § 1692g). Generally, when a debt collector sends a letter to a debtor regarding a debt, there is a presumption that "communication with" the debtor has taken place. *See Mahon*, 171 F.3d at 1201; *see also Campbell v. Credit Bureau Systems, Inc.*, 2009 WL 211046, at *12 (E.D. Ky. 2009) (noting that "when a debt collector sends a validation notice, there is a presumption of delivery"). This presumption, however, can be can be rebutted by showing that the initial letter "was sent to an incorrect address and returned as undeliverable[.]" *Campbell*, 2009 WL 211046 at *12.

Mr. Horvath alleges that PCS *sent* an initial communication to him that did not contain the relevant information required by § 1692g. (Dkt. # 16.) Mr. Horvath further alleges that PCS failed to properly send a validation notice within five days of the initial communication. (*Id.*) This is sufficient to invoke the presumption that PCS made an "initial communication" with PCS. *See Mahon*, 171 F.3d at 1201. In his Amended Complaint, however, Mr. Horvath further alleges that he never received the initial communication or *any* other communication from PCS. (Dkt. # 16.) In other words, on its face, the Amended Complaint rebuts the presumption that the initial communication, or any other communication, ever took place.

Because the notice obligations under § 1692g are not triggered until *after* an initial communication, Mr. Horvath's claim under that provision necessarily fails. To the extent that Mr. Horvath contends that PCS communicated him by reporting information to consumer reporting agencies and to his lawyer, those claims also fail. *See Pretlow v. AFNI, Inc.*, 2008 WL 345593, at *1 (W.D. Va. Feb. 7, 2008) (dismissing § 1692g claim where a plaintiff merely alleged communications between defendant and consumer reporting agencies); *Kaiser v. Braje & Nelson, LLP*, 2006 WL 1285143, at *4 (N.D. Ind. May 5, 2006) (rejecting a plaintiff's § 1692g claim where all communications were with the debtor's attorney, not with the debtor).

## CONCLUSION

Having determined that Mr. Horvath fails to state a claim for relief under 15 U.S.C. § 1692, his Amended Compliant must be dismissed. Mr. Horvath's remaining claims, negligence and defamation, are state law claims, and the Court declines to exercise supplemental jurisdiction over those claims.

**IT IS THEREFORE ORDERED** that PCS's first Motion to Dismiss (Dkt. # 11) is **DENIED** as Moot;

**IT IS FURTHER ORDERED** that PCS's renewed Motion to Dismiss (Dkt # 18) is **GRANTED**. Mr. Horvath's Amended Complaint, including his claims under the FDCPA, are dismissed without prejudice. The Clerk of the Court is directed to **TERMINATE** this action.

DATED this 12th day of May, 2010.

_____
G. Murray Snow
United States District Judge